

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

AL:EAG
F.#2008R01043

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 22, 2017

<u>By Hand and ECF</u>

The Honorable Dora L. Irizarry
Chief United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Llesh Biba
     <u>Criminal Docket No. 09-836 (DLI)</u>

Dear Chief Judge Irizarry:

  The government respectfully submits this letter in connection with the Court's request at a conference in the above-referenced matter on September 1, 2017 for additional briefing on the applicability of the one-level enhancement under U.S.S.G. § 2B3.1(b)(6) and an enhancement based on the degree of bodily injury sustained by the victims of the Ansonia, Connecticut robbery. For the reasons set forth herein, the government respectfully submits that the one-level enhancement for the object of the offense applies and that a four-level enhancement for serious bodily injury applies.

I. <u>The Taking of a Controlled Substance Was an Object of the Offense</u>

  The defendant has objected to the Probation Department's inclusion of a one-level enhancement based on the government's contention that a preponderance of evidence shows that narcotics were among the items that Biba and his co-conspirators intended to take during the August 2006 robbery in Ansonia, Connecticut.

  A. <u>Applicable Law</u>

  Section 2B3.1(b)(6) of the Guidelines provides for a one-level enhancement "[i]f a . . . controlled substance was taken, or if the taking of such item was an object" of the robbery. It is irrelevant whether a controlled substance was actually taken during the robbery. See <u>Quiroz v. United States</u>, 2016 WL 2642225, at *4 (S.D.N.Y. May 6, 2016) ("Section 2B3.1(b)(6) only requires that the taking of a controlled substance be 'an object of

the offense,' not—as petitioners contend—that a controlled substance in fact be taken.") (quoting U.S.S.G. § 2B3.1(b)(6)). Similarly, based on the plain language of the enhancement, the enhancement applies even if there were other objects of the robbery, so long as the taking of a controlled substance was among the objects.

    B.    <u>Analysis</u>

The government's evidence supports a finding by a preponderance that Biba and his co-conspirators intended to take a controlled substance had they found one during the course of the robbery. During a consensually-recorded meeting between co-conspirator Shelton Willis and a cooperating witness (the "CW"), made after the Ansonia robbery, Willis admitted that he, Biba and Biba's brother committed the robbery. Willis explained that Biba's brother lived "in the town," <u>i.e.</u>, Ansonia, Connecticut, and knew individuals in town who sold narcotics. Willis also claimed (incorrectly) that following the robbery, law enforcement in Connecticut did not "care" that the robbery had taken place – suggesting that law enforcement was less concerned because a perceived narcotics trafficker was the target – and instead was investigating whether the male victim had engaged in criminal activity. In addition, Willis said that the female victim of the robbery had told law enforcement that the perpetrators – Biba, Willis and Biba's brother – targeted the landlord because he "sells drugs" and that as a result, she "blew his whole spot up," or exposed his purported criminal activity. A portion of the recording included the follow:

> WILLIS: Yea, he lives out there, yea. He drives like a truck for produce or something. He he, like in the town. He knows all the people that have...
>
> CW: Hustling and stuff.
>
> WILLIS: Yea, that deals with…
>
> CW: They were supposed to have weed right.
>
> WILLIS: Yea, yea.
>
> CW: Nothing.
>
> WILLIS: They're investigating the guy now, the cops, like they don't even care that, the crime itself, like the hold-up.

* * *

> WILLIS: Because, she told the cops they weren't here for me. They were here for him because he sells drugs.[1]
>
> CW: Oh.
>
> WILLIS: She blew his whole spot up.

In addition, and significantly, at his guilty plea hearing, the defendant also admitted that he "agreed with others to be involved in a robbery of a <u>drug dealer</u> in Ansonia, Connecticut."[2] 3/8/2017 Tr. at 38 (emphasis added). (A copy of the transcript of the guilty plea hearing is attached as Exhibit A.)

Based on Willis's statements to the CW that he believed the male victim was a narcotics trafficker, and the defendant's admission during the guilty plea proceeding that he believed the victim was a "drug dealer," the preponderance of the evidence shows that among the objects of the robbery was taking narcotics. This is so because the evidence suggests that Biba and the others had no information about the victim other than that he was believed to be a narcotics trafficker, and therefore they could not have known whether on the night of the robbery, the victim would have had narcotics (for future sales) or cash proceeds (earned from the prior sale of narcotics). Accordingly, the one-level enhancement under Section 2B3.1(b)(6) applies.[3]

II. <u>Degree of Bodily Injury</u>

The defendant also has objected to the Probation Department's inclusion of a four-level enhancement for a "serious bodily injury" incurred during the August 2006 robbery in Ansonia, Connecticut, and instead asserts that only a two-level enhancement (for

---

[1] In fact, neither the female victim nor the male victim (<u>i.e.</u>, the landlord) told law enforcement that the male victim/landlord sold narcotics.

[2] At Biba's guilty plea hearing, the government asserted that Biba and his co-conspirators intended to obtain narcotics or narcotics proceeds, but Biba – through counsel – argued that Biba only intended to get proceeds and not actual narcotics. <u>See</u> 3/8/2017 Tr. at 40 (Defense counsel said, "Mr. Biba would like to clarify that the intention of the robbery was to steal the narcotic proceeds, or that's his understanding, that it was the proceeds of narcotics, not the narcotics."). Notwithstanding Biba's self-serving statement, the government submits that a preponderance of evidence supports that the taking of narcotics was among the objects of the robbery.

[3] The government looked for, and did not find, any cases in the Second Circuit in which a court addressed whether such an enhancement was warranted under similar facts. Absent such case, the government respectfully submits that the requested finding is warranted under the plain text of the Guidelines and the existing factual record.

3

"bodily injury" rather than "serious bodily injury") should apply. For the reasons discussed below, the government respectfully submits that a four-level enhancement is warranted.

  A.  <u>Applicable Law</u>

   U.S.S.G. § 2B3.1(b)(3) provides for varying levels of enhancement based on the degree of injury sustained by a victim. Two levels are warranted where the injury is "bodily injury," whereas four levels are warranted where the injury is "serious bodily injury" and six levels are warranted if the injury is permanent or life-threatening. If the degree falls between the categories, a three- or five-level enhancement is warranted. "Bodily injury" and "serious bodily injury" are defined in U.S.S.G. § 1B1.1. Bodily injury "means any significant injury; <u>e.g.</u>, an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." U.S.S.G. § 1B1.1, App. Note 1(B). Serious bodily injury "means injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." U.S.S.G. § 1B1.1, App. Note 1(L).

   Because the inquiry is fact-intensive, the Second Circuit has not addressed the particular facts in this case, but its prior holdings, and those of other courts within the Second Circuit, are instructive. For example, the Second Circuit has upheld a district court's finding of serious bodily injury where the victim's "'[h]ead was bleeding,' her 'face was covered in blood,' she was hospitalized for ten days, and she was prescribed strong pain medication and a neck brace." <u>United States v. Rolle</u>, 631 Fed. Appx. 17, 22 (2d Cir. Nov. 24, 2015). Also, in <u>United States v. Shi Yong Wei</u>, 373 Fed. Appx. 121, 2010 WL 1718718 (2d Cir. Apr. 29, 2010), the Circuit explained:

> In this case, the district court found that defendants sprayed one of their victims, Zhang Qing Hai, with a blinding liquid and beat him so severely that he lost consciousness. Upon Zhang's arrival at a hospital, his shirt was full of blood and he required stitches. Further, the district court found, based in part on its own observation, that, as a result of the assault, Zhang's ability to read remained impaired for at least two and a half years, through defendants' trial. These factual findings, largely based on Zhang's trial testimony, were not clearly erroneous. <u>See</u> <u>United States v. Cuevas</u>, 496 F.3d at 267 (observing that factual findings based on witness testimony "are entitled to particular deference" since credibility assessment "is distinctly the province of the district court" (internal quotation marks and citation omitted)). Such findings were sufficient to support "at least a three-level increase" in the offense-level calculation. Sentencing Tr. at 5; <u>see</u> <u>United States v. Guang</u>, 511 F.3d at 124 (collecting cases indicating that determination of injury level "presents a predominantly factual issue, which we review for clear error"). Where a victim has been beaten bloody and

4

> unconscious, requiring emergency hospitalization (even briefly) and stitches, any reasonable person would conclude that the injury caused "extreme physical pain." See United States v. Eubanks, 593 F.3d 645, 651 (7th Cir. 2010) (upholding three-level enhancement for injuries deemed "greater than . . . 'significant' but not quite 'serious'" where victim required four staples to close head wound and "almost lost consciousness" (emphasis added)); cf. United States v. Tavares, 93 F.3d 10, 16 (1st Cir. 1996) (observing that one-inch laceration requiring stitches and accompanied by "great deal of blood loss . . . might well be thought [sufficiently] serious" to warrant four-level enhancement for "serious bodily injury"). Similarly, where a person who has had a blinding liquid sprayed in his eyes manifests continued difficulty reading apparent to the district court more than two years later, a finding of protracted vision impairment is warranted.

Shi Yong Wei, 2010 WL 1718718, at *1 (footnote omitted); see also United States v. Cole, 594 Fed. Appx. 35 (2d Cir. Feb. 19, 2015) (upholding four-level enhancement for "serious bodily injury" where "the victim testified to specific injuries (for example, burns on her skin where she had been bound) and to her subsequent hospitalization) (citation omitted); Andres v. United States, 2001 WL 290053, at *3 (S.D.N.Y. Mar. 26, 2001) ("Being handcuffed, hogtied, kicked and threatened with death at gunpoint can reasonably be understood as involving extreme physical pain, and that, in turn, qualifies under the Guidelines as "serious bodily injury.") (citation omitted).

    B.    Analysis

        According to police reports, the male victim of the Ansonia, Connecticut, robbery was unresponsive when first approached by officers; was transported to the hospital by an ambulance; suffered "heavy bleeding," a broken nose, a fractured skull (according to a CAT scan), bruising to the left side of his face, his neck and his left ankle, and broken ribs; and required eight stiches to the top of his head. The male victim also reported that he passed out as a result of the beating by the defendant and his coconspirator. The female victim was transported to a hospital by ambulance and sustained multiple bloody abrasions. In addition, the injuries to the victim resulted in blood spatter to the exterior of the residence that was the target of the robbery.

        The government respectfully submits that the injuries sustained by the male victim, at a minimum, amount to "serious bodily injury." See U.S.S.G. § 1B1.1, App. Note 1(L) (serious bodily injury is defined to include injuries that "require[] medical intervention such as . . . hospitalization"); Rolle, 631 Fed. Appx. at 22 (upholding district court's inclusion of serious bodily injury enhancement where victim required hospitalization); see also United States v. Corbin, 972 F.2d 271, 272 (9th Cir. 1992) (upholding a sentencing enhancement for "serious bodily injury" based on a laceration requiring a two-layer closure

using more than 25 sutures); United States v. Eubanks, 593 F.3d 645, 651 (7th Cir. 2010) (affirming district court's assessment of a three-level enhancement based on "four staples to close the head wound, and because the victim almost lost consciousness" and observation that "the injury fell somewhere in the continuum between 'bodily injury' and 'serious bodily injury'") (emphasis added) (cited by Second Circuit in Shi Yong Wei, 2010 WL 1718718, at *1).  Moreover, based on the police reports, a preponderance of evidence supports finding that the male victim suffered from "extreme physical pain," and therefore the four-level enhancement is warranted on that separate and independent ground as well.  See U.S.S.G. § 1B1.1, App. Note 1(L) (serious bodily injury warranted where the victim suffered "extreme physical pain"); Shi Yong Wei, 2010 WL 1718718 at *1; Cole, 494 Fed. Appx. at 35; Andres, 2001 WL 290053, at *2.

III.	Conclusion

For the foregoing reasons, the government asks the Court to impose, with respect to the Guidelines calculation for the robbery of the victims in Ansonia, Connecticut, the one-level enhancement for the taking of narcotics as an object of the robbery and the four-level enhancement for serious bodily injury.

Respectfully submitted,

BRIDGET M. ROHDE
Acting United States Attorney

By:	/s/
Elizabeth Geddes
Assistant U.S. Attorney
(718) 254-6430

cc:	Clerk of the Court (DLI) (by ECF)
	Joyce London, Esq. (by ECF)
	Jared A. Maneggio, U.S. Probation Officer (by email)

6